IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARK EDWARD TAYLOR                                                              PLAINTIFF

      V.                  Civil No. 2:22-cv-02052-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Mark Edward Taylor, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.    Procedural Background

Plaintiff filed his application for DIB on July 23, 2019, alleging disability since July 1, 2019, due to multiple concussions, major headaches, knee pain, shoulder pain, depression, and a speech impediment. (ECF No. 9, pp. 75, 90, 162-168, 194). An administrative hearing was held on September 28, 2020. (*Id*. at 37-67). Plaintiff was present and represented by counsel.

Born in July 1971, Plaintiff was 48 years old on his alleged onset date and possessed a high school education. (ECF No. 9, pp. 27, 89). He had past relevant work ("PRW") experience as an industrial truck driver, stock crane operator, production assembler, and industrial cleaner during the 15 years preceding his alleged onset date. (*Id*. at 27, 196, 204-211).

On December 8, 2020, the Administrative Law Judge ("ALJ"), Hon. Elisabeth McGee, identified Plaintiff's moderate degenerative joint disease ("DJD") of the right shoulder status post-

1

surgery in October 2019; osteoarthritis of the bilateral knees; meniscus tear of the right knee status post-surgery in September 2019; anxiety; depression; and a mild stutter as severe impairments. (ECF No. 9, p. 17).  She then concluded he did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.).  Despite his impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work, with occasional reaching overhead, pushing and pulling with his right upper extremity; not requiring excellent speech due to a mild stutter; and no exposure to hazards such as ladders, ropes, scaffolds, moving mechanical parts, unprotected heights, deep water, and/or open flame.  (*Id*. at 18).  Further, she concluded the Plaintiff could only perform simple, routine, repetitive tasks involving few variables and little judgment; and requiring simple, direct, and concrete supervision and routine and superficial social interaction.  With the assistance of a vocational expert ("VE"), the ALJ ultimately decided there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including public area attendant, counter clerk, photo finishing, and cotton classer aide.  (*Id*. at 28).

The Appeals Council denied Plaintiff's request for review on February 2, 2022.  (ECF No. 9, pp. 5-10).  Plaintiff subsequently filed this action on March 31, 2022.  (ECF No. 2).  Both parties have filed appeal briefs (ECF Nos. 13, 17), and the matter is ready for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154

(2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only

considers Plaintiff's age, education, and work experience in the light of his RFC if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises four issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at Step Two of the sequential analysis; (3) whether the ALJ properly assessed the Plaintiff's subjective complaints; and (4), whether the ALJ's RFC determination is consistent with the medical evidence of record. After reviewing the record, we agree that the ALJ breached her duty to develop the record regarding the Plaintiff's neurological impairments.

The ALJ does owe the claimant a duty to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). While the ALJ is not required to function as the claimant's substitute counsel, she is tasked with developing a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). In so doing, "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "and must order medical examinations and tests when the records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). And, while there is no requirement that the ALJ's decision be supported by a specific medical opinion, it must be supported by some medical evidence. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff contends that the ALJ should have ordered a consultative neurological examination to develop the record. He testified to suffering from chronic headaches which he

4

attributed to a lengthy history of sports related, more specifically football related, concussions. (ECF No. 9, p. 52). In July 2019, Plaintiff established care with Dr. John Kientz, Jr., for the treatment of migraine headaches. (*Id*. at 338-342). When he returned in September, he indicated that the Imitrex previously prescribed was not helpful, as he was experiencing two headaches per week with each one lasting six to seven hours. (*Id*. at 348-354). Plaintiff stated that the headaches were prefaced by blurry vision and associated with extreme pain, nausea, photophobia, and phonophobia. Dr. Kientz ordered a CT scan of his brain, which was unremarkable. (*Id*. at 414). This, however, is not surprising, as post-concussion syndrome ("PCS") cannot be seen on a CT scan unless there is a fracture or an active bleed. *See* Dr. Jaycie Loewen, *Do CT Scans Show Concussions or Post-Concussion Syndrome?*, *at* https://www.cognitivefxusa.com/blog/do-ct-scans-show-concussions-and-pcs (last accessed February 21, 2023).

Follow-up appointments in March and April 2020 document continued complaints of migraines. (*Id*. at 414-418). Because his medications had not been beneficial, Plaintiff reported that he generally took Ibuprofen, laid in a very dark room, and slept off his headaches. Dr. Kientz adjusted his Propranolol dosage and prescribed Naproxen to gain some pain control. Unfortunately, the medication changes were not particularly helpful, prompting Dr. Kientz to refer him to neurology in August 2020. At the administrative hearing, the Plaintiff testified that he experienced one headache per week, despite his medications, and had not yet heard when he would see the neurologist. (ECF No. 9, pp. 54-55).

Dr. Chester Carlson also conducted a general physical exam in October 2019, noting a history of concussions, a speech impediment, right shoulder dysfunction, depression, and he stated, "I suspect strongly undiagnosed Parkinsonism." (ECF No. 9, pp. 285-289). Parkinsonism refers to a group of brain conditions manifested by slowed movements, rigidity (stiffness), and tremors.

5

*See* Cleveland Clinic, *Parkinsonism*, *at* https://my.clevelandclinic.org/health/diseases/22815-parkinsonism#:~:text#ParKinsonism%20is%20an%20umbrella%20term,involve%20deterioration%20of%20your%20brain (last accessed February 16, 2023).  According to Dr. Carlson, Plaintiff exhibited cogwheel rigidity in the elbows and bradykinesias, two of the three symptoms of Parkinsonism.  (*Id*. at 288).

We also note Dr. Robert L. Spray's October 11, 2019, consultative mental evaluation wherein he gave the Plaintiff a provisional diagnosis of mild neurocognitive disorder.  (*Id*. at 295-298).  He opined that the Plaintiff would have moderate difficulty with delayed recall, limited attention and concentration, poor abstract reasoning, below average persistence, and difficulty completing tasks in a timely manner.

In his Pre-Hearing Memorandum, the Plaintiff did request that the ALJ order a neurological consult.  (ECF No. 9, pp. 262-263).  Unfortunately, there is no indication that a consult was ever ordered.  Given Dr. Kientz's belief that a neurology consult was warranted, Dr. Carlson's suspicion of Parkinsonism, and Dr. Spray's notation of a possible neurocognitive impairment, the ALJ should have ordered a neurological consult prior to rendering her decision.  As such, remand is necessary to allow the ALJ to order a neurological consult and reconsider the Plaintiff's RFC.

Additionally, we note that the speech and social interaction requirements of the positions identified by the VE at Step Five do not match the speech restrictions included in the ALJ's RFC determination.  At the hearing, the ALJ asked the VE, Debra Steele, to assume a person of the Plaintiff's age, education, and work experience with a slight stutter who could perform light work with occasional overhead reaching, pushing, and pulling with the right upper extremity and no exposure to hazards such as ladders, ropes, scaffolds, moving mechanical parts, unprotected heights, deep water, or flames.  From a mental perspective, he added a restriction to work involving

6

simple, routine, and repetitive tasks with few variables and little judgment; requiring simple, direct, and concrete supervision; routine but superficial social interaction with the supervisors, co-workers, and the public; and work not requiring excellent speech. (ECF No. 9, pp. 62-64). In response, the VE identified the positions of public area attendant/usher (DICTIONARY OF OCCUPATIONAL TITLES ("DOT") § 344.677-014); counter clerk (DOT § 249.366-010); and cotton classer aide (DOT § 429.587-010). When asked if her testimony was consistent with the DOT, Ms. Steele explained that the DOT did not speak to the requirement of overhead reaching, so she had relied upon her own observations and professional experience to select positions requiring only occasional reaching, handling, and fingering. (*Id*. at 64). She did not, however, mention the speech or social interaction requirements of these positions. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir.2014) (VE must explain any inconsistencies between her testimony and the DOT). A review of the DOT's description of the counter clerk and cotton classer aide positions reveals that these positions require the ability to "speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, and using present, perfect, and future tenses." DOT §§ 249.366-010, 429.587-010. They require different levels of personal interaction, with the cotton classer aide position involving the lowest level (which is labeled as helping and requires attending to work assignments and instructions or orders from supervisors with no immediate response required), while the counter clerk position requires signaling (which involves talking with and/or signaling people to convey or exchange information). The position of usher also requires the ability to speak simple sentences, using normal word order, and present and past tenses, but the level of interaction required indicates that the individual must be able to attend to the needs or requests of people, suggesting significant interaction. DOT § 344.677-014. Given the ALJ's restriction to superficial social interaction and work that did not require excellent speech,

the VE's testimony appears to conflict with the DOT's requirements. As such, the VE's testimony does not provide substantial support for the ALJ's determination that the Plaintiff could perform work that exists in significant numbers in the national economy. *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir.2014) (emphasis added) (citing *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir.2014) (reversing and remanding because record did not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical and jobs suggested)).

Accordingly, on remand, the ALJ is also directed to ensure that the VE specifically addresses any conflicts between the DOT and the social interaction and speech restrictions contained in the RFC.

### IV. Conclusion

For the reasons stated above, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of February 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE